## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| GREGORY GUTMAN, Individually and On Behalf of All Others Similarly Situated,<br><br>  Plaintiff,<br><br>  v.<br><br>JUST ENERGY GROUP INC., DEBORAH MERRIL, JAMES LEWIS, PATRICK MCCULLOUGH, and JIM BROWN,<br><br>  Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br><u>JURY TRIAL DEMANDED</u><br><br><u>CLASS ACTION</u> |

Plaintiff Gregory Gutman ("Plaintiff") individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by Just Energy Group Inc. ("Just Energy" or the "Company"), as well as media and analyst reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## <u>NATURE OF THE ACTION</u>

1.  This is a class action on behalf of persons or entities, other than Defendants, who purchased or otherwise acquired publicly traded Just Energy securities from November 9, 2017 through August 19, 2019, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities

Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

4.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as the Company has offices and conducts business in this District and a substantial part of the conduct complained of herein occurred in this District.

5.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

6.     Plaintiff, as set forth in the accompanying certification incorporated by reference herein, purchased Just Energy securities during the Class Period and was economically damaged thereby.

7.     Defendant Just Energy is incorporated under the laws of Canada with its principal executive offices located in Ontario, Canada. Just Energy has offices, operates, and provides services in Texas. The Company's registered agent is located in Houston, Texas. Just Energy purports to be a consumer company focused on essential needs, including electricity and natural gas commodities; on health and well-being, through products such as water quality and filtration devices; and on utility conservation, including renewable energy options. Just Energy's securities

trade on the New York Stock Exchange ("NYSE") under the symbol "JE."

8.    Defendant Deborah Merril ("Merril") was the Co-Chief Executive Officer of the Company from April 2014 to April 2018.

9.    Defendant James Lewis ("Lewis") was the Co-Chief Executive Officer of the Company from April 2014 to April 2018.

10.    Defendant Patrick McCullough ("McCullough") was the Chief Executive Officer of the Company from April 2018 until August 2019. He was the Chief Financial Officer ("CFO") of the Company from August 2014 to April 2018.

11.    Defendant Jim Brown ("Brown") has been the CFO since April 2018.

12.    Defendants Merril, Lewis, McCullough, and Brown are herein referred to as "Individual Defendants."

13.    Collectively, Defendant Just Energy and Individual Defendants are herein referred to as "Defendants."

14.    Each of the Individual Defendants:

a.    directly participated in the management of the Company;

b.    was directly involved in the day-to-day operations of the Company at the highest levels;

c.    was privy to confidential proprietary information concerning the Company and its business and operations;

d.    was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

e.    was directly or indirectly involved in the oversight or implementation of

the Company's internal controls;

f.    was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

g.    approved or ratified these statements in violation of the federal securities laws.

15.    Just Energy is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

16.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Just Energy under *respondeat superior* and agency principles.

## SUBSTANTIVE ALLEGATIONS

### Background

17.    Just Energy purports to be a consumer company focused on essential needs, including electricity and natural gas commodities; on health and well-being, through products such as water quality and filtration devices; and on utility conservation, including renewable energy options.

### Materially False and Misleading Statements
### Issued During the Class Period

18.    On November 9, 2017, the Company reported its quarterly results for the period ended September 30, 2017 in a Form 6-K (the "November 2017 6-K") filed with the SEC. Attached to the November 2017 6-K was the Management's discussion and analysis as of November 8, 2017, which stated the following with regard to internal controls.

4

As of September 30, 2017, the Co-Chief Executive Officers ("Co-CEOs") and Chief Financial Officer ("CFO") of the Company, along with the assistance of senior management, have designed disclosure controls and procedures to provide reasonable assurance that material information relating to Just Energy is made known to the Co-CEOs and CFO, and have designed internal controls over financial reporting based on the criteria established in the 2013 Internal Control – Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (the COSO criteria) to provide reasonable assurance regarding the reliability of financial reporting and the preparation of consolidated financial statements in accordance with IFRS.

During the three and six months ended September 30, 2017, there were no changes in Just Energy's internal controls over financial reporting that occurred that have significantly affected, or are reasonably likely to significantly affect, the Company's internal controls over financial reporting.

19.     The November 2017 6-K also discussed receivables and allowance for doubtful accounts, stating in relevant part:

The allowance for uncollectible accounts reflects Just Energy's best estimates of losses on the accounts receivable balances. Just Energy determines the allowance for doubtful accounts on customer receivables by applying loss rates based on historical results to the outstanding receivable balance. Just Energy is exposed to customer credit risk on its continuing operations in Alberta, Texas, Illinois, Ohio, Delaware, California, Michigan, Georgia, the U.K. and commercial direct-billed accounts in British Columbia. Credit review processes have been implemented to perform credit evaluations of customers and manage customer default. If a significant number of customers were to default on their payments, it could have a material adverse effect on the operations and cash flows of Just Energy. Management factors default from credit risk in its margin expectations for all the above markets.

20.     On February 7, 2018, the Company reported its quarterly results for the period ended December 31, 2017 in a Form 6-K filed with the SEC. Therein, the Company reported sales of CAD $912.20 million, net income of CAD $208.42 million, and trade and other receivables of CAD $354.08 million.

21.     On May 16, 2018, the Company reported its financial results for the fiscal year ended March 31, 2018 on Form 6-K with the SEC, stating sales of CAD $3.63 billion, net income of CAD $518.57 million, trade and other receivables of CAD $395.73 million, and based EBITDA

of CAD $174.4 million.

22.     On June 1, 2018, the Company filed its annual report on Form 40-F with the SEC for the period ended March 31, 2018 (the "2018 40-F"). The 2018 40-F contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants McCullough and Brown. The 2018 40-F also contained "Management's responsibility for financial report" which was signed by Defendants McCullough and Brown, affirming the previously reported financial results and stating that the Company's internal control over financial reporting was effective and stating:

> Management has evaluated the design and operation of the Company's internal control over financial reporting as of March 31, 2018, and has concluded that such internal control over financial reporting is effective.

23.     On August 8, 2018, after the market closed, the Company announced its first quarter 2019 financial results in a press release, reporting, among other things, sales of CAD $876.46 million.

24.     On August 14, 2018, the Company reported its quarterly results for the period ended June 30, 2018 in a Form 6-K ("August 2018 6-K") filed with the SEC. The August 2018 6-K stated Just Energy's reported sales of CAD $876.46 million, net loss of CAD $41.42 million, and trade and other receivables of CAD $677.23 million. Attached to the August 2018 6-K was the Management's discussion and analysis as of August 8, 2018, which stated the following with regard to internal controls.

> The CEO and CFO of the Company have designed or caused to be designed under their direct supervision the Company's Internal Control over Financial Reporting ("ICFR") which has been effected by Just Energy's Board of Directors, management and other personnel in order to provide reasonable assurance regarding the reliability of financial reporting and the preparation of the interim condensed consolidated financial statement in accordance with IFRS.

> During the three months ended June 30, 2018, there were no changes in the

Company's ICFR that have materially affected, or are reasonably likely to materially affect, the Company's ICFR.

25.    On November 8, 2018, the Company reported its quarterly results for the period ended September 30, 2018 in a Form 6-K (the "November 2018 6-K") filed with the SEC. Therein, the Company reported sales of CAD $956.84 million, net loss of CAD $21.45 million, and trade and other receivables of CAD $694.48 million. Attached to the November 2018 6-K was the Management's discussion and analysis as of November 7, 2018, which stated the following with regard to internal controls:

> Both the CEO and CFO have designed, or caused to be designed under their supervision, the Company's Internal Control over Financial Reporting ("ICFR") which has been effected by the Board of Directors, management and other personnel to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements in accordance with IFRS. During the six months ended September 30, 2018, there were no changes that materially affected, or are reasonably likely to materially affect, the Company's ICFR.

26.    On February 7, 2019, the Company reported its quarterly results for the period ended December 31, 2018 in a Form 6-K (the "February 2019 6-K") filed with the SEC. Therein, the Company reported sales of CAD $966.65 million, net income of CAD $27.03 million, and trade and other receivables of CAD $786.85 million. Attached to the February 2019 6-K was the Management's discussion and analysis as of February 6, 2019, which stated the following with regard to internal controls:

> Both the CEO and CFO have designed, or caused to be designed under their supervision, the Company's Internal Control over Financial Reporting ("ICFR") which has been effected by the Board of Directors, management, and other personnel, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements in accordance with IFRS. During the nine months ended December 31, 2018, there were no changes that materially affected, or are reasonably likely to materially affect, the Company's ICFR.

27.    On May 22, 2019, the Company filed its annual report on Form 40-F with the SEC

for the period ended March 31, 2019 (the "2019 40-F"). The 2019 40-F contained signed SOX

certifications by Defendants McCullough and Brown. The 2019 40-F reported sales of CAD $3.8

billion, net loss of CAD $122.87 million, and trade and other receivables of CAD $783.78

million. The 2019 40-F also stated that the Company had identified and remediated deficiencies

in its internal control over financial reporting, stating in relevant part:

> During January 2019, in connection with the Company's assessment of internal
> controls over financial reporting, the Company which identified and
> subsequently remediated a deficiency in the design and operating effectiveness
> of certain internal controls related to certain account balances in certain
> markets. Specifically, the Company identified a deficiency in the design of
> internal controls through the effective operation of alternative internal controls
> related to the preparation, analysis and review of certain gross margin accounts
> in those markets. Upon identification of the deficiency, the Company designed
> internal controls were designed, including account reconciliations, to remediate
> the deficiency in design. These new internal controls were effectively operated
> for February 28, 2019 and March 31, 2019. Just Energy considers the internal
> control deficiency to be effectively remediated as at March 31, 2019.
>
> As a result of remediating this deficiency in the design of internal controls and
> operating them in an effective manner, the Company identified certain
> individually insignificant reconciling items that should have been recorded in
> periods prior to April 1, 2017. The Company determined that it was appropriate
> to revise its consolidated financial statements as at April 1, 2017, as denoted
> within Note 5 of the consolidated financial statements, to correct for an
> aggregate error of $14.2 million in the opening accumulated deficit account. It
> was determined that this deficiency in the design and operating effectiveness of
> these particular internal controls resulted in no significant error in the income
> statements for the years ended March 31, 2019 and 2018.

28.    The above statements identified in ¶¶ 18-27 were materially false and/or

misleading, and failed to disclose material adverse facts about the Company's business,

operations, and prospects. Specifically, Defendants failed to disclose to investors that: (1) Just

Energy experienced customer enrollment and nonpayment issues; (2) Just Energy had not

taken appropriate reserves to its trade receivables to reflect these issues, thereby rendering

previously issued financial results it publicly disseminated materially false and misleading; (3)

Just Energy lacked adequate internal controls over its financial reporting; and (4) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**The Truth Begins to Emerge**

29.    On July 23, 2019, before the market opened, Just Energy disclosed that it had "identified customer enrolment and non-payment issues, primarily in Texas, over the past 12 months" and that, as a result, it expected an impairment charge of CAD $45 to $50 million to its Texas residential accounts receivable. The press release stated, in relevant part:

> Just Energy Group Inc. ("Just Energy") announced today that as part of the previously announced Strategic Review process, management identified customer enrolment and non-payment issues, primarily in Texas, over the past 12 months. As management identified these issues, more robust operational controls were put in place, culminating in numerous improvements being implemented during June and July 2019.

> Due to the identified issues, management is updating its provisioning methodology used to estimate its reserve for trade receivables. Management expects an incremental impairment of the Texas residential accounts receivable of approximately CAD $45 to $50 million as of June 30, 2019.

> "The enrolment and non-payment issues have been remediated and management is confident in the business and operational controls currently in place. These issues will not have a continuing effect on future cash flows," said Rebecca MacDonald, Just Energy's Executive Chair.

30.    On this news, the Company's share price fell $0.66 per share, or over 15%, to close at $3.72 per share on July 23, 2019, on unusually heavy trading volume.

31.    On August 5, 2019, the Company announced Defendant McCullough's departure as President, CEO, and director of Just Energy effective immediately.

32.    On this news, Just Energy's share price fell $0.38 per share, or more than 10.7%, over the next two trading days to close at $3.16 per share on August 6, 2019, on unusually heavy trading volume.

33.     On August 14, 2019, after the market closed, Just Energy issued a press release entitled "Just Energy Reports Fiscal First Quarter 2020 Results." The press release stated that the Company was suspending its divided, that its adjustment to account receivables would be larger than expected, and that Just Energy would be restating several previously issued financial statements. Further, the press release stated in relevant part:

> During the quarter, management identified operational issues in customer enrolment and non-payment of accounts receivable in the Texas residential market, resulting in an aggregate adjustment of $58.6 million. Management also proceeded to identify collection issues in the U.K. market, resulting in an aggregate adjustment of $74.1 million. As a result, the Company recorded additional allowances for doubtful accounts which are included in the Company's restated third quarter and year-end financial statements for fiscal year 2019, and in the Company's first quarter results for fiscal year 2020, as referenced within each respective management discussion and analysis.

34.     On this news, Just Energy's share price plummeted $1.39 per share, or over 44.8%, over the next two trading days to close at $1.71 per share on August 16, 2019, on unusually heavy trading volume.

35.     On August 19, 2019, Just Energy filed a Form 40-F/A with the SEC (the "2019 40-F/A"). The  2019 40-F/A disclosed that Just Energy's allowance for doubtful accounts for its fiscal year ended March 31, 2019 was understated by $111.2 million consisting of $53.7 million for doubtful accounts in its Texas residential market and $57.5 million related to operational and collection issues in its United Kingdom (U.K.) market. The 2019 40-F/A continued in relevant part:

> It was identified that during the quarters ended December 31, 2018, March 31, 2019 and June 30, 2019, management failed to effectively operate the control designed to capture appropriate expected credit loss rates to be reflected in the estimated allowance for doubtful accounts in the Texas residential market and the U.K. market. This material weakness arose due to insufficient analysis of a rapid deterioration of the aging of the Company's accounts receivable caused by operational enrollment deficiencies in the Texas market, and due to operational and accounts receivable non-collection issues in the U.K. market. The CEO and

the CFO concluded that as a result of the material weakness in internal control over financial reporting, the Registrant's design and operation of the Registrant's disclosure controls and procedures were not effective at March 31, 2019 to ensure that the information required to be disclosed in the reports that the Registrant files with or submits to the Commission is recorded, processed, summarized and reported, within the required time periods

36.     On this news, share price fell $0.15 per share, or over 8.77%, to close at $1.56 per share on August 19, 2019, further damaging investors.

37.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publicly traded securities of Just Energy during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

39.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that

11

customarily used in securities class actions.

40.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

41.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class. Common questions of law and fact exist as to

(a)    whether Defendants' acts as alleged violated the federal securities laws;

(b)    whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

(c)    whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)    whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

(e)    whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

(f)    whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(g)    whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

42.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

43.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a)    Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)    the omissions and misrepresentations were material;

(c)    the Company's securities are traded in efficient markets;

(d)    the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

(e)    the Company traded on the NYSE, and was covered by multiple analysts;

(f)    the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; Plaintiff and members of the Class purchased and/or sold the Company's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts; and

(g)    unexpected material news about the Company was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

44.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

45.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

46.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47.     This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

48.     During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

49.     The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon

14

plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

50.     The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

51.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

52.     As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially

inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

53.    Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

54.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

55.    By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

56.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57.    During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

58.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the

Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

59.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

60.     Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

61.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason

of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: September 12, 2019    Respectfully submitted,

**STECKLER GRESHAM COCHRAN PLLC**

/s/ R. Dean Gresham
R. Dean Gresham
Texas Bar No. 24027215
12720 Hillcrest Rd, Suite 1045
Dallas, Texas 75230
Telephone: (972) 387-4040
Facsimile: (972) 387-4041
Email: dean@stecklerlaw.com

-and-

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (not admitted)
Laurence M. Rosen, Esq. (not admitted)
275 Madison Avenue, 34th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
   lrosen@rosenlegal.com

*Counsel for Plaintiff*